# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     . CRIMINAL NO.  15-10148-LTS
.
   V.                    . BOSTON, MASSACHUSETTS
                             . SEPTEMBER 21, 2015
DAVID JONES, ET AL              .
    Defendants            .
. . . . . . . . . . . . . . . . .

### TRANSCRIPT OF STATUS CONFERENCE
#### BEFORE THE HONORABLE MARIANNE B. BOWLER
##### UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:

UNITED STATES ATTORNEY'S OFFICE
Emily O. Cummings, Esq.
Michael J. Crowley, Esq.
J. Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3120
emily.cummings@usdoj.gov
Michael.crowley@usdoj.gov

For defendant David Jones:

BOURBEAU AND BONILLA, LLP
Michael C. Bourbeau, Esq.
LLP One Commercial Street, Unit
One Boston, MA 02109
617-350-6565
mike@lawgenie.com

For defendant Berry:

Mark Shea, Esq. for:
J.W. CARNEY, JR. & ASSOCIATES
Samir Zaganjori, Esq.
20 Park Plaza, Suite 1405
Boston, MA 02116
617-933-0350
szaganjori@carneydefense.com

For Defendant Bloudson:

SHEA & LAROCQUE
Mark W. Shea, Esq.
929 Massachusetts Avenue, Suite 103
Cambridge, MA 02139
617-577-8722
markwshea@gmail.com

For Defendant Cepeda:

SHAPIRO, WEISSBERG & GARIN
Jonathan Shapiro, Esq.
90 Canal Street, Suite 500
Boston, MA 02114-2022
617-742-5800
jshapiro@sswg.com

For Defendant Cureton:

ROPES & GRAY LLP
Joshua Levy, Esq.
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
617-951-7281
jlevy@ropesgray.com

For Defendant Finklea:

Paul J. Garrity, Esq.
14 Londonderry Road
Londonderry, NH 03053
603-434-4106
garritylaw@myfairpoint.net

For Defendant Marsman:

NATOLA ASSOCIATES, LLC
Michael F. Natola, Esq.
175 Andover Street, Suite 205
Danvers, MA 01923
978-739-9300
MNatola@NatolaAssociates.com

For defendant Spriggs

DEMISSIE & CHURCH
Derege Demissie, Esq.
929 Massachusetts Avenue, Suite 01
Cambridge, MA 02139
617-354-3944
dd@demissiechurch.com

For Defendant Diaz:

Michael Liston, Esq.
25 Mt. Vernon Street
Cambridge, MA  02140
857-259-6040
michaeljliston@gmail.com

Court Reporter:

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**_MARYANN V. YOUNG_**
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

4

1   (Case called into session)

2   (2:06:12 PM)

3          THE CLERK:  USA v. Jones et al, Criminal Action

4   15-10148.  Counsel please identify themselves for the

5   record.

6          MS. CUMMINGS:  Good afternoon, Your Honor.

7   Emily Cummings and Michael Crowley on behalf of the United

8   States.

9          THE COURT:  All right.  I'm going to go down the

10  list because it's easier for me to keep track.  For David

11  Jones?

12         MR. BOURBEAU:  Yes.  Good afternoon, Your Honor,

13  Michael Bourbeau for Mr. Jones.

14         THE COURT:  Thank you very much.  For Karim

15  Berry?

16         UNIDENTIFIED:  You're covering Mark.

17         MR. SHEA:  Oh yeah.  Sorry, Mark Shea covering

18  for Mr. Zaganjori?

19         UNIDENTIFIED:  Sam.  Let's call him--

20         MR. SHEA:  Sam.

21         THE COURT:  All right, so noted.  Aaron

22  Bloudson?

23         MR. SHEA:  That's me again.  I'm just relaxing.

24         THE COURT:  Must have been a nice weekend, Mr.

25  Shea.

5

1          MR. SHEA:  Well it was a late football game

2   last night.

3          So Mark, good afternoon, Your Honor, for Aaron

4   Bloudson.

5          THE COURT:  Thank you.  Jorge Cepada?

6          MR. SHAPIRO:  Good afternoon, Your Honor,

7   Jonathan Shapiro for Mr. Cepada.

8          THE COURT:  Thank you.  Dearron Cureton?

9          MR. LEVY:  Good afternoon, Your Honor, Joshua

10   Levy, on behalf of Mr. Cureton.

11          THE COURT:  Thank you.  Esteva Diaz?

12          MR. LISTON:  Good afternoon, Your Honor, Michael

13   Liston on behalf of Mr. Diaz.

14          THE COURT:  Thank you very much.  Frankie

15   Finklea?

16          MR. GARRITY:  Your Honor, good afternoon, Paul

17   Garrity for Mr. Finklea.

18          THE COURT:  Thank you very much.  Rashid

19   Marsman?

20          MR. NATOLA:  Good afternoon, Your Honor, Michael

21   Natola.

22          THE COURT:  Thank you very much.  And last but

23   not least Rahasin Spriggs?

24          MR. DEMISSIE:  Good afternoon, Your Honor,

25   Derege Demissie for Rahasin Spriggs.

6

1          THE COURT:  Thank you very much.

2          Well Ms. Cummings, where are we?

3          MS. CUMMINGS:  Yes, Your Honor.  As the

4    government put forward in its status conference report to

5    the Court we made two large or are about to make our

6    second large discovery productions.

7          THE COURT:  And just noting, we do have Mr.

8    Andrews here too from, right, in terms of coordinating

9    costs and saving money.

10         MS. CUMMINGS:  Well, we don't do much

11   coordination with Mr. Andrews but we're glad he's here.

12         THE COURT:  No that's for CJA counsel.

13         MS. CUMMINGS:  Okay.  We've made one large 8,500

14   documents, 40,000 media files, that was the first

15   production that was made in July.  We're about to make our

16   second production of I think it's approximately 6,000

17   documents and an additional DVD of the final media files.

18   There's certainly nowhere near the amount that was

19   produced the first time.  I believe at that point in time

20   the second--

21         THE COURT:  When will you make that?

22         MS. CUMMINGS:  Tomorrow or Wednesday.

23         THE COURT:  Okay.

24         MS. CUMMINGS:  The second production should be

25   the final large scale production the government

anticipates making. Obviously we're still waiting for DEA analyses or ballistic analyses from items seized pursuant to the search warrants and controlled purchases, but in no way do we anticipate another disclosure the size of either of the first two. We are also, we have hard drives that we're just uploading this second large production of all the paper documents as well as the media documents. We're prepared to send that to the institutions housing the defendants. There's a little bit of confusion because of the two different pending protective orders as to how we were going to make these disclosures to the institutions. Sort of an, out of an abundance of fairness to counsel who signed onto the first protective order, we did decide to include all the documents onto these hard drives. It can't be printed. It can't be reproduced at the institutions.

THE COURT: Who in this group has not signed onto a protective order?

MS. CUMMINGS: Mr. Garrity and Mr. Bourbeau.

THE COURT: Okay.

MR. GARRITY: But, Judge, to be fair, Mr. Finklea has conditionally signed off on it, but hasn't, he had authorized - (inaudible - #2:10:08 PM).

THE COURT: All right, and what about you, Mr. Bourbeau?

8

1      MR. BOURBEAU:  I've not received one item of

2  discovery.  The government has not produced one item and

3  as I've previously made the request at a minimum I should

4  have received the Rule 16 materials and, but I will, you

5  know, unless ordered by the Court, I object to the request

6  made by the government.

7      THE COURT:  What about the Rule 16 materials?

8      MS. CUMMINGS:  Your Honor, all of the materials

9  covered the government feels, under Rule 16, the

10  government feels as though should come under the confines

11  of the protective order.  Mr. Bourbeau continues to put

12  the government in a rather awkward situation as he keeps

13  making overtures for a resolution of his client's case

14  without taking the discovery.  So while I appreciate that

15  he doesn't want to sign onto a protective order, the

16  government doesn't feel that it can in good faith engage

17  in any sort of conversation regarding the resolution of

18  his client's case.

19      THE COURT:  Can you direct him, can you direct

20  to him some specific discovery that might change his

21  position?

22      MS. CUMMINGS:  Well, we're not producing any of

23  it to him until we have his signature on a protective

24  order unless the Court orders otherwise.  His client is

25  the lead client under this indictment.  He was running two

9

1  separate crack houses.  It was his phone that the

2  government was up on for 60 days.  He's looking at a 10

3  year mandatory minimum and he is a career offender.  He

4  was a member of the Columbia Point Dogs.  He would hang

5  out with Willy Jo, excuse me, Willy Berry, Tony Berry, the

6  Williams brothers at his apartment.  Mr. Berry of course

7  is one of the individuals depicted on the YouTube videos

8  flashing around discovery from other cases.  So the

9  government is not comfortable, given security issues and

10 given quite frankly the way the government has really

11 attempted to work through and has worked through

12 successfully with 40 out of 48 attorneys' terms of a

13 protective order so, I think Mr. Bourbeau is the only

14 individual today who remains at issue in terms of the

15 protective order.

16        Just to continue--

17        THE COURT:  Well, let's hear from Mr. Bourbeau a

18 little bit on this.

19        MR. BOURBEAU:  Well respectfully, Your Honor,

20 when the first request for protective order was made, I

21 made a motion to compel.  A second protective, request for

22 protective order was made.  I made another motion to

23 compel.  I've asked the government to follow the rules,

24 and to date there's been no order one way or the other

25 concerning those rules.  What I've asked again, I never

1   would have agreed and would have been filing motion

2   practice if I knew the government could hold against the,

3   a defendant, either sign the order and get the discovery

4   or you get nothing, unless, without an order from the

5   Court.  And again, the government should not be in the

6   position of withholding that which they even agreed to

7   withhold under the automatic discovery rules or comply

8   with those rules, and that's really where we're at.  I am

9   more than willing to try to work out something.  My very

10  first suggestion was to put my client under, you know,

11  give a protective order to my client not to disclose.  The

12  government rejected that.  And again, I'm not, I, unless

13  the Court orders otherwise, I'm in a position again trying

14  to follow the rules and, because I see it not just in this

15  case but in potential future cases, and without the rules

16  being followed here and the government holding the client

17  hostage on the issue of discovery, that's just simply not

18  fair.

19          THE COURT:  Well the case that's--

20          MR. CROWLEY:  To be clear, Your Honor, we filed

21  something early on about the protective order.  We had

22  this argument last time.  One thing that I believe Mr.

23  Bourbeau has chosen to ignore again is this client has a

24  prior record of intimidation.  So to say that this is just

25  a person that's not going to use those documents when he's

1    tied to the other individuals who have used them

2    publicly--

3              THE COURT:  Well the case has to go forward.

4              MS. CUMMINGS:  Your Honor, I think at this point

5    the remaining eight defendants in all of the related

6    matters are really looking to the Court for whether or not

7    you're going to endorse the proposed order or not.  We

8    have had agreements with some of the defense counsel who

9    said look I'll sign onto it now.  If the Court decides no

10   protective order, and the government's position has been

11   look, we've put forward sufficient basis for a protective

12   order.  There's been outing of other government witnesses

13   by name, telephone number, date of birth, address.  This

14   is a group that's responsible for murders and shootings,

15   gun possession.  It's a dangerous group.  There's no way

16   for us to piecemeal out discovery without a blanket

17   protective order.  So we've worked through I think at this

18   point the issues raised by defense counsel to make sure

19   that the protective order is as minimally restrictive as

20   possible.  At this point the government is really seeking

21   to minimize distribution of paper documents.  That's

22   really it.  The hard drives that were given to defense

23   counsel, they can download all of the documents onto the

24   hard drive at cost to the government not to CJA, as not to

25   block up their computers or require them to buy discs or

12

1 anything of that nature.  You know, they were concerned

2 about the government knowing what was disclosed so they're

3 going through their water marking as proposed by Mr. Katz

4 which seemed to be agreeable to most attorneys, and I

5 think it's--

6 　　　　　THE COURT:  You can sit down, Mr. Crowley.

7 　　　　　MS. CUMMINGS:  I think it's moving, I think it's

8 moving forward in the most responsible way the government

9 can.  We've certainly not withheld discovery from anybody

10 who's agreed to the terms pending the Court's decision.

11 We're not holding anything.  You know, 40 attorneys are--

12 　　　　　THE COURT:  All right.  I'll give you a decision

13 within the week.

14 CUMMINGS:  Thank you, Your Honor.

15 　　　　　T　　　MS. HE COURT:  Mr. Shea?

16 　　　　　MR. SHEA:  Judge, thank you.  I probably fall

17 into the group and some of my co-counsel within this group

18 and others probably find themselves similarly situated,

19 which is, the reason I stood up was Ms. Cummings mentioned

20 the group of lawyers who had signed the protective order

21 but were perhaps hoping the Court might not impose a

22 protective order, so I'd like to speak to that--

23 　　　　　THE COURT:  Sure.

24 　　　　　MR. SHEA:  --because it, while I signed it, part

25 of why I signed it was because for instance, the one place

13

1   my client could go live that didn't involve Section 8

2   housing was with his girlfriend who was, that address was

3   the subject of the search warrant, but I couldn't get the

4   affidavit for the search warrant to deal with that which

5   is relevant to me trying to get you to release my client

6   on conditions without signing the protective order and so,

7   you know so, so we signed it and, you know, we'll work

8   with it if you feel the need to impose it, but I would

9   point out that you know we're not at Jencks Giglio meaning

10  it's all redacted still as far as I can tell.  There's no

11  showing that any of the people the government is seeking

12  to protect are actually incarcerated with our clients,

13  meaning - so I'm a little at a loss as to what my client

14  would do with this paperwork, meaning if he, if he, he's

15  not going to, but if he were to even want to send it, his

16  mail is monitored.  It would be clearly captured.  If he

17  looked to move it within the institution, the people

18  aren't in the institutions so that, and I bring that up

19  just because I have other cases that are, you know,

20  kidnappings with torture where my client alway, it was

21  only at the Jencks Giglio point that there came to be any

22  kind of discussion of the use of the documents and you

23  know for two years my, my client did a major kidnapping

24  that's alleged to have involved numerous other kidnappings

25  and torture, had materials the entire time, and now I

1  represent a fellow who's one of 48 who is mentioned

2  apparently in two police reports for narcotics exchanges.

3  The best they could do at the detention hearing was say

4  that somebody had called him once to ask him to go to

5  court because they were all threatening somebody at court,

6  except they couldn't show that my client responded to the

7  call, appeared at the place, was ever anywhere near it or

8  did anything, and so, you know, they're, they're painting

9  with an awfully broad brush 48 people for the conduct of

10  apparently two people on YouTube.  It is pretty unwieldly

11  in terms of going through it.  You know, it's a case where

12  I assume part of why Mr. Andrews is here and, and the

13  courts are taking an interest in us trying to lower bills

14  on these massive cases and this is a ma, going to create a

15  lot of additional work to do all of this stuff.

16        And lastly I would just point out that it does

17  reach a kind of an absurd proportion when I have to get

18  the okay from the government to send my client his own

19  booking tape.  I mean that gets to be a little bit

20  ridiculous.  I mean what, am I worried that he's going to

21  share the tape with other people about what he said?  I

22  mean that's a little bit beyond--

23        THE COURT:  What's your response to something

24  like that?

25        MS. CUMMINGS:  Your Honor, I think Mr. Shea's

1 being a little bit disingenuous for lack of a better

2 term.  The government's not asking to monitor anything.

3 In fact it was brought up at the first status conference

4 where this was concern.  We said you know what?  It wasn't

5 something that we, we thought about but it's a great point

6 so you do it.  You send whatever you want.  Mark it in

7 some way.  That way if it gets out we know where it came

8 from.  This is, and we came up with a way that is of zero

9 cost to the defense bar and you can do it with the click

10 of a button.  It's not unwieldy.  It's not hard.  It's

11 something that's done routinely in law practices all

12 across America, all across the world probably.  We've

13 provided everybody with hard drives.  They can put all

14 their documents onto and take them wherever they want to

15 get them printed or put on discs at cost to the government

16 which we didn't need to do.  This is a case where we have

17 defendants calling, their attorneys calling daily wanting

18 to resolve their cases but not wanting to be the first one

19 out of fear of how it will look to the other inmates.

20 That's a reality of this case.  It's a reality of a lot of

21 cases in this building but in this case in particular.

22 People are afraid to be the first one to plead guilty

23 because they don't want to be seen as a potential

24 cooperator, even when they're not.  So while I appreciate

25 and I understand the concern about the hand of the

1  government on justice and on how things are being

2  communicated between attorneys and clients, this is a case

3  where concerns are brought to the government routinely

4  about safety.  And it's about the safety of people in

5  these institutions and, quite frankly, these YouTube

6  video's go through discovery and how you read discovery to

7  figure out who's a rat?  Who dimed you out?  Who's

8  cooperating?  Which everybody can do in the institution

9  and call their boy on the phone and let them know or tell

10 their girl when she comes to say hi and that's just the

11 reality of what we're dealing with.  It's not made up.

12 It's not fabricated, but there's no way to piecemeal it

13 out.

14          THE COURT:  All right.  I'll take a further look

15 at it.  I sort of gave it some time hoping that some of it

16 would sort itself out--

17          MS. CUMMINGS:  And it has.

18          THE COURT:  --and waited for most people to come

19 back from vacation, but I'll give the motion for a

20 protective order another look.

21          MS. CUMMINGS:  Thank you.

22          THE COURT:  Now, I just had lunch with Judge

23 Sorokin and he's thinking of setting a trial date.

24          MS. CUMMINGS:  That's fine.

25          THE COURT:  So I'd just like to hear from

17

1  counsel.  Get some idea.  I need to tell him how far out

2  he needs to be looking.

3       UNIDENTIFED:  Judge, from my standpoint I, even

4  though I have signed the **consent order**, I haven't seen any

5  of the discovery's.  We're talking 14,000 pages.  I would

6  think a trial date if Judge Sorokin is talking about that

7  sometime way out next spring, next summer.

8       THE COURT:  Spring, summer shall I tell him?

9       MR. SHEA:  I like fall really.  I think, I mean

10 realistically a year out I don't think is that much.  The

11 government in its own filing today said it will take us

12 six months to get through everything.  That I think is

13 hopeful in that, I mean I have three, I'm sure other

14 people are in similar boats.  I have about three or four--

15      THE COURT:  Maybe the government doesn't know

16 how fast you can read?

17      MR. SHEA:  Apparently it's slower than they

18 thing but the, it's, my tri, I have you know a trial in

19 October, a trial in December, one in January, one in

20 March.  So all I'm saying is during the time that we're

21 supposedly getting this ready, we're all quite busy I'm

22 sure, and so, and that's, I don't assume we're starting

23 discovery until we're ready.

24      THE COURT:  I mean July and August I think are

25 hard because--

1    MR. SHEA: Yeah.

2    THE COURT: --it's hard to get everybody on

3 board. You've got vacations and--

4    MS. CUMMINGS: Your Honor, a case that I did in

5 front of Judge Sorokin before he moved into the district

6 court, he gave parties I think it was a year to get

7 discovery and discovery motions completed before they were

8 required to file evidentiary motions. I think--

9    THE COURT: Well there's a change now, you know,

10 we are in this district trying to shorten our time from

11 indictment to trial, so--

12    MS. CUMMINGS: I think some cases--

13    THE COURT: --the pressure's on.

14    MS. CUMMINGS: I think some cases that's a great

15 idea for but I do think that a case with 41,000 media

16 files, it's maybe not as realistic. We've talked about

17 having the case, declared complex which certainly we could

18 do from a discovery standpoint. But I also think that

19 once the issue of the protective order is resolved and the

20 discovery issues are resolved, with the majority of the

21 attorneys there's a lot of communication going on between

22 the government and attorneys and I expect that a lot of

23 the defendants will resolve themselves in fairly short

24 time.

25    MR. SHEA: One last thing and I apologize, but

1  going back to the protective order, this, the National

2  Litigation Support Team which works for CJA and the

3  federal defenders, we're been in touch with them, Ms.

4  Larocque, my law partner has, and we've been trying to say

5  coordinate efforts to have them help streamline some of

6  the discovery for us, particularly there's pole cameras

7  too and things like that in this that at least in other

8  cases I had, they were very helpful on, so--

9       THE COURT:  What do they do exactly?

10      MR. SHEA:  Well what they do, at least in my

11  experience with the pole camera, what they did was they

12  went through all of this incredibly voluminous stuff and

13  identified what was relevant to each defendant or at least

14  they pulled out from me what was relevant for my defendant

15  so that it was helpful in not spending, I mean literally

16  it's just day after day of tape so, and some of what we've

17  received so far is, has not been as easy to find things as

18  one might have hoped.  So the idea is that they would help

19  reduce costs and point defense counsel in the right

20  direction for their, their client.  I'm just asking, it's

21  have, the funds for it would have to be approved, but what

22  I'm asking is when you, if you construct a protective

23  order, I'd ask you to make it so they can have access to

24  the documents.

25      THE COURT:  All right well, first--

20

1          MR. LEVY:  Your Honor, if I, on the trial date

2    issue, just I would second Mr. Shea that I think spring

3    summer is not realistic in the volume of discovery in this

4    case.  I think next fall at a minimum.

5          THE COURT:  Early fall.  That's what I'll tell

6    him.

7          MR. BOURBEAU:  With all due respect to the

8    Court, I would at least like an opportunity to have some

9    discovery before we even have a clue as to what the trial

10   date is.  I heard another blast against Mr. Jones today

11   about all his associations and responsibilities, again

12   without a single affidavit or piece of discovery, and so

13   to simply pick a trial date for Mr. Jones who hasn't had

14   previous access to any discovery and now we're 60 days out

15   and not one piece of discovery's been provided other than

16   what was provided at the detention hearing.

17         THE COURT:  Well it's by his choice.  I mean he

18   has chosen to take this route.

19         MR. BOURBEAU:  With all due respect, Your Honor,

20   and please, the, he did not choose.  There's been no

21   protective order directed by the Court.  What the

22   government did, did not follow the rules under 116, did

23   not follow the rules under Rule 16 and there's not a

24   single affidavit that ties him to any particular

25   destruction of evidence, passing out of information on

21

1   YouTube.  The intimidation that they referred to was a

2   district court matter for which was CWOF'd back in 2006,

3   eleven you know, nine years ago.  So that is totally

4   unrelated to any Columbia Point Dogs incident.  So it's

5   not a route that he chose respectfully, Your Honor.  It is

6   a route that the government has put him in a position of.

7           MR. CROWLEY:  Respectfully, we could have filed

8   a letter instead of a motion under the rules.  We filed an

9   entire motion and cited legal support for it, and this

10  argument that documents can't be mailed out or anything

11  like that, anyone that has done gang cases has seen

12  documents come out under someone else's mail, or Ms.

13  Cummings point—

14          THE COURT:  All right.  All right.

15          MR. CROWLEY:  --is equally applicable that they

16  call and it goes out.

17          THE COURT:  All right.  I'm going to tell Judge

18  Sorokin early date next fall.  We'll go from there.  I

19  need a trial, a status conference date from you, Mr.

20  Garvin.

21          MR. GARVIN:  December 1 at two o'clock.

22          THE COURT:  December the 1st at 2:00 p.m.?

23          MR. GARVIN:  Two o'clock.

24          THE COURT:  Two p.m. and I need a motion from

25  the government to exclude the time from now until December

1  1st.

2          Is there anyone here that does not assent to

3  that including Mr. Shea who is also representing Sam?

4  Agreed?

5          COUNSEL:  Agreed.

6          MR. BOURBEAU:  Agreed if, just with, because

7  again I have no idea what--

8          THE COURT:  Agreed on that?

9          MR. BOURBEAU:  --the Court's going to do.  I

10  agree to the December 1st date but I do want to at least

11  have an opportunity to come back before the Court before

12  that if the discovery issue remains.  Either that or--

13          THE COURT:  I have a motion.  I'll give you a

14  hearing.

15          MR. BOURBEAU:  Okay.

16          THE COURT:  I mean all you have to do is call

17  Mr. Garvin and say I want a hearing.  I'll give you a

18  hearing within a week to 10 days usually.

19          MR. BOURBEAU:  Thank you.

20          THE COURT:  But you agree to exclude the time,

21  Mr. Bourbeau?

22          MR. BOURBEAU:  Oh, yes.

23          THE COURT:  Okay, you were on your feet.  I want

24  to be absolutely sure.  All right December 1st then, and

25  I'll entertain motions in the interim and I will take

23

1   another look at the motion for a protective order.

2         MS. CUMMMINGS:  Thank you, Your Honor.

3         THE COURT:  All right.  Two motions for the

4   protective order actually.

5         MS. CUMMINGS:  It's, one answered the questions

6   the Court raised at the first status conference so--

7         THE COURT:  Yup.

8         MS. CUMMINGS:  --I think at this point we're

9   really on this, the second terms--

10         THE COURT:  The second one.

11         MS. CUMMINGS:  --of the second, just to--

12         THE COURT:  All right.

13         MS. CUMMINGS:  --work it out.

14         THE COURT:  All right, we stand in recess.

15   (Court adjourned)

16   (2:30:53 PM)

17

18

19

20

21

22

23

24

25

24

1          CERTIFICATION

2       I, Maryann V. Young, court approved transcriber,

3    certify that the foregoing is a correct transcript from

4    the official digital sound recording of the proceedings in

5    the above-entitled matter.

6

7    /s/ Maryann V. Young            November 4, 2015

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25